UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHARI GREENBERG MELAMED,

               Plaintiff,

   - against -

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-4352 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Shari Greenberg Melamed ("Plaintiff") brings this action against The Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), pursuant to 42 U.S.C. § 405(g), seeking review of Defendant's determination that Plaintiff is not entitled to Disability Insurance Benefits under Title II of the Social Security Act ("SSA"). Plaintiff has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c), (Pl.'s Mem. (Doc. No. 17)), and Defendant has cross-moved for judgment on the pleadings, (Def's Mem. (Doc. No. 19)). For the reasons set forth below, Defendant's motion is DENIED, and Plaintiff's motion is GRANTED with respect to her request for remand, and the matter is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

Plaintiff filed a claim for Disability Insurance Benefits ("DIB") under Title II of the SSA in 2013. (Tr. at 242–48, 249–54; *see also* Tr. 94, 278.) She alleged that her disability began on March 1, 2002, due to asthma, migraine headaches, anxiety disorder, heart palpitations, bronchiectasis, irritable bowel syndrome (IBS), Sjogren's disorder, gastroesophageal reflux

disease (GERD), Cushing's syndrome, diabetes, high blood pressure (HBP), high cholesterol, osteopenia, memory problems/confusion, cataracts, and tendinitis.  (*Id*.)  The Administration issued a letter, advising that based upon its discussions with Plaintiff, she was not eligible for Supplemental Security Income ("SSI") payments under Title XVI of the SSA because she had income of $7,000 per month, which "is too high . . . ."  (Tr. at 100–03.)

Plaintiff's claim for benefits under Title II was denied at the initial level on April 2, 2014. (*Id*. at 104–11.)  She requested a hearing before an administrative law judge ("ALJ") on her DIB claim on May 5, 2014.  (*Id*. at 112–14.)  Plaintiff attended a hearing before ALJ Michael Cofresi on June 1, 2015, but ALJ Cofresi believed that a medical expert was necessary to render testimony as to Plaintiff's condition prior to her date last insured and the case was adjourned. (Tr. at 74–81.)  Plaintiff attended a second hearing before ALJ Cofresi on October 19, 2015, but no testimony was taken due to a technical error which prevented the medical expert from testifying, and the case was adjourned.  (Tr. 82– 89.)

After ALJ Cofresi retired, Plaintiff appeared before ALJ Michelle Allen on December 16, 2015.  (Tr. at 35–72.)  It is of note that the hearing before ALJ Allen proceeded without the testimony of a medical expert, despite the fact that ALJ Cofresi, a seasoned ALJ, had twice adjourned the case finding that testimony imperative.  (*Id*.)

On March 16, 2016, ALJ Allen issued a decision finding that Plaintiff was not disabled from March 1, 2002, her alleged disability onset date, to December 31, 2002, her date last insured for disability benefits.  (Tr. at 17–34.)  The Appeals Council denied Plaintiff's request for review on May 22, 2017, making ALJ Allen's decision the final determination of the Commissioner in this case.  (Tr. 1–6.)

On July 21, 2017, Plaintiff filed the instant action in federal court. (*See* Compl. (Doc. No. 1).) The parties in this matter entered a joint Stipulation of Facts on May 20, 2019. (*See* Doc. No. 23.) The Court hereby incorporates the facts contained therein by reference.

## STANDARD OF REVIEW

A final determination of the Commissioner of Social Security upon an application for SSI benefits is subject to judicial review as provided in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). In reviewing the final determination of the Commissioner, a court does not determine *de novo* whether the claimant is disabled. *See Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The "substantial evidence" test applies only to the Commissioner's factual determinations. Similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Where the Commissioner makes a legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Id*. (citation omitted). An ALJ's failure to apply the correct legal standards is grounds for reversal. *See id*.

## DISCUSSION

## I. Eligibility for Disability Benefits

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g.*, *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004), *amended on other grounds,* 416 F.3d 101 (2d Cir. 2005). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see, e.g.*, *Butts,* 388 F.3d at 383.

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The regulations of the Social Security Administration require a five-step analysis for determining whether a claimant is disabled:

> [1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> [2] If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities.
>
> [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the

claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.

[4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

[5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)* (quoting *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); 20 C.F.R. §§ 404.1520, 416.920.

## II. The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2002, through her date last insured of December 31, 2002. (Tr. at 22.)

At step two, the ALJ found that Plaintiff suffered from the severe impairments of asthma, sinusitis, and gastroesophageal reflux diseases (GERD). (Tr. at 22.) Additionally, the ALJ found that Plaintiff suffered from the following non-severe impairments: depression and anxiety, and ischemic heart disease. (*Id*. at 22–23.)

At step three, the ALJ determined that through the date last insured Plaintiff did not have an impairment or combination that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and 416.926), although the ALJ considered Listings 3.02 and 3.03. (Tr. at 24.)

The ALJ found that through the date last insured, Plaintiff would be capable of performing a substantial range of light work. (Tr. at 24.) She was able to occasionally climb ramps and stairs, and frequently stoop, kneel, crouch and crawl. Plaintiff could never climb ladders or scaffolds. She could occasionally be exposed to unprotected heights, moving mechanical parts, weather, dust, odors, fumes, and pulmonary irritants. She should never be exposed to wetness and humidity, extreme cold below 32 degrees, or extreme heat above 80 degrees, and only occasionally to cold above 32 degrees, and to heat below 80 degrees. (*Id.*) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a teacher's aide, (DOT code 999.327-010), and as a marketing manager, (DOT code 163.117-910). (Tr. at 29.)

Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 CFR 416.920(g). (Tr. at 29-30.)

### A. The ALJ Failed to Develop the Record.

Plaintiff alleges that the ALJ committed error by not requesting that Dr. Frumkin clarify whether her medical source opinions regarding Plaintiff's function pertained to Plaintiff's functioning prior to her date last insured, or were limited to her recent condition. This Court agrees.

This case is notable insofar as Plaintiff filed a claim for benefits in October of 2013 alleging that she became disabled more than 11 years earlier in March of 2002. While there are records from various physicians and facilities who have provided Plaintiff treatment, there is only one single medical source which treated Plaintiff on a consistent basis from the time prior to her date last insured of December 31, 2002, through the date of the decision in this matter. (Tr.

at 742–52.)  Dr. Dalia Frumkin, MD treated Plaintiff from August of 2002, through April of 2015.  (Tr. at 742.)

On May 20, 2015, Dr. Frumkin completed a medical report which described Plaintiff's limitations.  The report stated that Plaintiff would be limited to sitting one hour at time for a total of 3–4 hours in a day; would be able to stand for 30 minutes at a time for up to a total of 1 hour on average per day; would be able to walk for 30 minutes at a time for up to a total of 2 hours each day; and would be able to lift 0–10 pounds.  (Tr. at 742–46.)  Those restrictions would limit Plaintiff to sedentary work.  Additionally, Dr. Frumkin noted that Plaintiff suffered from frequent exacerbations of prednisone-dependent asthma which had caused such side effects as fatigue, weight gain, and stress fractures.  (*Id*. at 743.)  Dr. Frumkin's report did not specify whether the diagnoses were contemporaneous with the 2015 visit, or whether they were retrospective.  (*Id*. at 742–46.)

While ALJ Allen acknowledged that there had been a long-standing treatment relationship between Plaintiff and Dr. Frumkin, she gave her opinions limited weight, noting that the opinion "appears to be based on the last examination of the claimant."  (Tr. at 28–29.)

The Court finds that the ALJ's assumption that Dr. Frumkin's assessment was based on Plaintiff's 2015 examination constituted error.  Under these circumstances, and given the lack of clarity, the ALJ had an obligation to request additional information or clarification from Dr. Frumkin regarding the basis for her opinions.

According to the SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history."  20 C.F.R. § 404.1512(d).  Furthermore, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record in light of the essentially non-adversarial nature

7

of a benefits proceeding. This duty ... exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (internal quotations marks omitted) (citations omitted). Thus, if the claimant's medical record is inadequate, it is "the ALJ's duty to seek additional information from the [treating physician] *sua sponte*." *Schaal*, 134 F.3d at 505; see *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."). The ALJ's affirmative duty comports with this Circuit's observation that "the Social Security Act is remedial or beneficent in purpose, and, therefore, to be broadly construed and liberally applied." *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (internal quotation marks omitted) (citations omitted). The Act's "intent is inclusion rather than exclusion." *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979).

In this particular case, there was uniquely one single medical source who had examined Plaintiff prior to her date last insured – Dr. Frumkin. In determining the weight to give Dr. Frumkin's opinions, the ALJ states first that Dr. Frumkin "purports to give a retrospective opinion as she notes that she has been treating the claimant since August of 2002," but then notes that "her assessment of limitations appears to be based on the last examination of the claimant. There is no evidence that her opinion is based on any examination prior to the DLI." (Tr. 28–29.)

The ALJ was correct to note that the time period to which Dr. Frumkin was referring was vague and required clarification. Dr. Frumkin's report makes it clear that she was in a position to render an opinion as to Plaintiff's limitations at the relevant period. However, the ALJ erred in that rather than request clarification, she proceeded under the assumption that Dr. Frumkin's opinions did not apply to the relevant time period.

The fact that there was ambiguity as to the time period in which Dr. Frumkin was rendering her opinion constitutes a "clear gap" in the record, which, pursuant to the holding in *Rosa*, the ALJ should have at least attempted to fill. The regulations of the Social Security Administration set forth procedures governing how the agency treats incomplete or inconsistent evidence. 20 C.F.R. § 404.1520b(2) provides:

> (2) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
>
> (i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
>
> (ii) We may request additional existing evidence;
>
> (iii) We may ask you to undergo a consultative examination at our expense (see § 404.1517 through 404.1519t); or
>
> (iv) We may ask you or others for more information.

In this instance, the sole method by which the ALJ could resolve the gap in the record was to recontact the physician, as there was no additional medical evidence available which pertained to the time period in question, and sending Plaintiff for a consultative examination would simply provide an opinion as to her present function rather than her function prior to her date last insured.

Therefore, the Court finds that the ALJ erred by not seeking clarification from Dr. Frumkin, as the ALJ had an affirmative duty to develop the record. The Court remands with the direction that Dr. Frumkin be contacted and asked to clarify her findings.

**B.     Failure to Seek Testimony from a Medical Expert**

The transcripts of the oral hearing indicate that ALJ Cofresi, who presided over two prior hearings which were adjourned due to technical issues, opined that it was necessary to obtain medical expert testimony, pursuant to HALLEX I-2-5-34, which sets forth when to obtain medical expert opinion, as follows:

1. When an Administrative Law Judge (ALJ) Must Obtain an ME Opinion (Not Discretionary)

   The ALJ must obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories in the following circumstances:

   - The Appeals Council or Federal court ordered an ME opinion.

   - There is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data. For more information, see Hearings, Appeals and Litigation Law (HALLEX) manual I-2-5-14 E.

   - The ALJ is considering finding that the claimant's impairment(s) medically equals a listing.

2. When an ALJ May Obtain an ME Opinion (Discretionary)

   An ALJ may need to obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories, when the ALJ:

   - Determines whether a claimant's impairment(s) meets a listed impairment(s);

   - Determines the usual dosage and effect of drugs and other forms of therapy;

   - Assesses a claimant's failure to follow prescribed treatment;

   - Believes a claimant's drug addiction or alcoholism may be material to finding a claimant disabled;

- Determines the degree of severity of a claimant's physical or mental impairment;

- Believes an ME may be able to suggest additional relevant evidence because there is reasonable doubt about the adequacy of the medical record;

- Believes an ME may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing;

- Believes an ME may be able to assist the ALJ by explaining and assessing the significance of clinical or laboratory findings in the record that are not clear;

- Is determining the claimant's residual functional capacity, e.g., the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;

- Has a question(s) about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, e.g., the ALJ may ask the ME to explain the nature of an impairment and identify any medically contraindicated activities; or

- Needs an expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 specifically provides that medical expert testimony may be sought to clarify the usual dosage and effects of medication. The Court notes that the medical record, and particularly Dr. Frumkin's opinions, make frequent references to the fact that Plaintiff's asthma, bronchiectasis, and other respiratory impairments required frequent treatment with prednisone, a steroid which causes serious side effects including Cushing's disease, fatigue, and weight gain. Accordingly, the Court finds that ALJ Cofresi's determination that it was necessary to call for medical expert testimony and his reasoning with regard to that matter was sound. The Court notes that at the time that ALJ Cofresi adjourned the first hearing, stating his opinion that medical expert testimony was necessary, he was a seasoned ALJ with experience in hearing procedures and interpreting the SSA's regulations.

Accordingly, the Court remands with the further direction that medical expert testimony be sought, pursuant to HALLEX I-2-5-34.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *See Pratts*, 94 F.3d at 39.

Here, the Court finds that there are gaps in the medical record. Accordingly, this case should be remanded for further proceedings.

For the reasons set forth herein, the Commissioner's motion for judgment on the pleadings, (Doc. No. 19), is denied, and Plaintiff's motion for judgment on the pleadings, (Doc. No. 17), is granted with respect to her request for remand. The matter is remanded to the Commissioner for further proceedings consistent with this Order. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: Brooklyn, New York
    September 30, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge